Harper J.
The presiding judge remarks that he considered the main question to arise out of the possession of Meachem, and that if he had felt at liberty to deviate from decided cases, he should have held that, conclusive evidence of fraud both in the vendor and the vendee, considering that on principle the true *21 doctrine. I agree with the presiding judge, with such qualifications as I shall proceed to express.
This is distinct from the class of cases we have lately had frequent occasion to consider, where a voluntary conveyance is made by a person who afterward proves to be insolvent. In this case there was a valuable consideration, and from the finding of the jury we suppose an adequate one. It steers clear, also, I think, of another class of cases ; such as that of Cadogan v. Kennet, Cowp. 432, and that of Foley v. Burnell, there reported in a note, Jarman v. Woolloten, 3 T. R. 618, and Haselenton v. Gill, ib. or Arundel v. Phipps, 10, Ves. 140. where the retaining of possession by a person who had made a conveyance of goods, was held not to be fraudulent because the possession was in pursuance of the trusts of the deed. Most of the cases mentioned, were those oí a husband’s retaining possession of property which he had conveyed on valuable consideration to the separate use of his wife. But this was not like that case, tho’ the plaintiff and Meachem lived in the same house, her right to control her own property was not in any degree subject to him. The possession was exclusively in the individual who had the use and servicés of the slaves, and as distinct as if they had lived apart. Meachem had the entire possession.
The case of Edwards v. Harben, 2 T. R. 587, is the leading case, in which it has been held, that if a man sell goods and continue in possession as visible owner, this of itself constitutes fraud, or is conclusive evidence of fraud. The determination is that unless possession accompanies and follows the deed, it is fraudulent and void. It has been supposed that this has been overruled or departed from by subsequent decisions. But upon the examination which I have been able to make of the several cases, I think it not impossible to reconcile them. It appears to me that the true ground on which the determination in Twyne’s case (which is the foundation of our doctrine on this subject) principally rested, has not been (if I may venture to say so much,) fully apprehended in many of *22 the subsequent cases. In Edwards v. Harben, the ground chiefly relied on in argument, is, that by allowing the vendor to retain possession after the sale as apparent owner, the vendee enables him to obtain a false credit; this would only apply to subsequent creditors, who trusted him on the faith of the property, and the creditor in this case was an antecedent one. It would not do to say that this of itself constitutes fraud, for then every one who lends or hires property to another, a merchant who furnishes a shopkeeper with goods on credit, and thus enables him to hold himself out as owner, and obtain credit, would be guilty of the same sort of fraud. Then it was argued with respect to antecedent creditors, that it tends to delay and hinder them, that relying on the appearance of property in the debtor, they are prevented from taking proper means to enforce their demands ; but in that ease as well as in the one before us, the debtor conveyed the whole of his property, and whether immediate possession had been taken by the vendee or not, antecedent creditors would have been equally defeated ; in such case then, it can not be the failure to take possession by the vendee, which operates the fraud on such creditors. The true view seems to me to be this: the law allows a debtor to give a preference to one creditor over another, and this is giving latitude enough ; but it will not allow him to secure an advantage to himself, at the expense of creditors as the price of such preference. If a party indebted to several, goes to one of his creditors, and says, “ my whole property is not more than sufficient to pay you; I will give you the preference, however, and assign it to you, provided you will allow me to have the use of it for a stipulated length of time or until I work out the debt,” and this is assented to by the debtor — this is fraud in both. The debt- or gains what he is not entitled to, at the expense of creditors, and enjoys the property independently of them ; and the favored creditor gains a pre ference by enabling the debtor to commit this in justice to the rest. He gives a bribe for the prefer *23 ence. But if such a stipulation, were made it would be privately done between the parties and incapable Of proof.
When, therefore, a debtor has made an assignment to a creditor who permits him still to retain possession of the property, and use it as his own, the law reasonably infers, and the inference is incapable of being rebutted by proof, that, there was such a stipulation or understanding between them; or if we could be sure that there was no such express understanding, but that the debtor had assigned in a tacit confidence that he to whom the preference was given would shew indulgence and permit the debtor still to enjoy the property — this would be done with a corrupt purpose, to which the creditor would make himself accessory, by allowing the debtor to retain and use the. •property. Such I understand to be the reasoning in Twyne’s case; “for although it is on true and good consideration, yet it is not bona fide, for no gifts shall be deemed bona fide within the said proviso, which is accompanied with any trust; as if a man be-indebted to several persons in the several sums of £20, and hath goods of the value of £20, and makes a gift of all his goods to one of them in satisfaction of his debt, but there is a trust between them that the ■ donee shall deal favorably with him in regard of his poor estate, either to permit the donor or some other for Mm, or for his benefit to use or have possession of them and it is contended he shall pay him his debt when he is able, this shall not be called bona fide within the said proviso.”
And again: “when a man greatly indebted to sundry persons, makes a gift to his son or any of his blood without consideration but only of nature, the law intends a trustbetween them, seil: that the donee would in consideration of such gift being freely and voluntarily made to him, and also in consideration of nature, relieve his father or cousin, and not see him want who had made such a gift to him.”
I think a material circumstance is adverted tp by-Lord Eldon in the case of Kidd v. Rawlinson, 2 Bos *24 & Pul. 59, which if it be attended to, will serve to reconcile the apparent contradictions in the several cases on this subject. In that case the goods of one A. who kept a public house, were put up at sheriff’s sale, and bid off by the plaintiff, A’s brother-in-law', who out of kindness allowed A. to retain possession, of the goods. This was determined to be no fraud. It was left to the jury whether the plaintiffhad purchased the goods with a view to defeat any execution by any of the creditors of A. Lord Eldon laid great stress on the circumstance that the plaintiff was not a creditor, and did not buy the goods as a means of satisfying any debt of his own. He cites what is said by Buller in his Nisi prius, 258, and what has been supposed inconsistent with the determination in Edwards v. Harben. “ The donor continuing in possession is not in all cases a mark of fraud ; as where the donee lends his money to the donor to buy goods,'and at the same time takes a bill of sale of them for securing the money.” So in Watkins v. Birch, 5 Taunt, 823, the goods were bought at sheriff’s sale, and paid for, and then allowed to remain in the defendant’s possession on rent or hire. This was determined not to be fraudulent; andt in Leonard v. Baker, 1st Maule & Selwyn, 251, where an insolvent person assigned to trustees, and absconded, and the trustees advertised and sold the goods, and the purchaser left a portion of them in the possession of the insolvent family. / I think the English cases and also our own which have been supposed to depart from the decision in Edwards v. Harben, may be reconciled with it on the distinction to which I allude. The conclusion is, that if a person buys the goods of an insolvent, and advances his money at the time, and leaves them in the vendor’s possession, that circumstance is only one among the other circumstances of proof, to be left to the jury in determining on the fair or fraudulent character of the transaction.— It is not so conclusive of fraud as to be incapable of being explained. But if they are given in satisfaction of a previous debt, that is of itself conclusive evidence of fraud: and this is founded on the most obvi *25 -ous reason. If a person pays a full and fair price for goods at the time of the purchase, or lends money to buy goods and takes a bill of sale to secure himself and from humanity or other good motive, leaves them in the vendor’s possession, this is no conclusive evidence of his being actuated by any corrupt or fraudulent purpose. He gains nothing by the transaction, and if we should suppose that the seller had a fraudulent design, still it would be a case in which the bona fide purchaser for valuable consideration should be protected. But if the goods are transferred'in satisfaction of a previous debt, the vendee does gain a most Important advantage. He is secured at the expense of other creditors, and if the vendee is then allowed to retain possession and use the goods, what conclusion so natural, as that this advantage was th e consideration on which preference was given ? This is the conclusion of law, the fact is generally incapable of proof. I have not referred particularly to the cases, and they arc numerous, which support the decision in Edwards v. Harben, nor is it necessary to do so.
It is enough to say that I believe no case comes in conflict with the decision itself, if it be placed on the proper grounds.
It is said in'“Shephard’s Touchstone, 60, “that if a debtor made a bill of sale to one of his creditors and remained in possession, using the goods as his own, this was fraud.”
Nor do X'think it can make a difference, that besides the. pre-existing debts an additional consideration is advanced by the donee at the time of the conveyance. This would open the door to the whole abuse against which the law intends to guard; the creditor might still secure himself and obtain a fraudulent preference and the debtor obtain an unfair advantage at the expense of creditors. The secret trust which the law regards as fraudulent would still be evidenced by the ■debtor’s retaining possession. I agree as a general rule with what was said on thé former hearing of this case before this Court, that the fraud of the vendor is of itself sufficient to avoid a conveyance. It must *26 be taken subject, however, to the important qualification expressed by Lord Mansfield in Cadogan v. Kennet. But then such a construction is not to be made in support of creditors as will make third persons sufferers. If a voluntary conveyance for the purpose of defeating creditors be made to an infant or an idiot rvho is incapable of participation in the fraud, it is still void. A person is not allowed to retain a gratuitous advantage obtained for him by the fraud of another, Huguenin v. Basely, 14, Ves. 289. In such case no injury is done to the donee; he is put in no worse situation than if the fraudulent conveyance had never been executed. But where a person has bona fide paid his money for property, he is not to be made a sufferer because his vendor may have had a fraudulent intention of putting his property out of the reach of creditors, and making away with the money. To avoid such a conveyance would generally have the effect of causing the vendee.to loose the property and his money too; at all events he would be exposed to great hazard and inconvenience. This does not seem to me to apply to the case of a person receiving a conveyance in satisfaction of a previous debt, the donor having had a fraudulent intention to defeat other creditors and expecting an advantage from the indulgence or gratitude of the donee. In such a case it is not difficult to say, that an injury is not done to the donee by avoiding the conveyance, he is in no worse situation than if the fraudulent act had never been committed. If, therefore, Meachem was induced to give a preference to the plaintiff over his other creditors in the expectation that she would permit him to retain and use the property which the law infers, was his object, and she has answered his expectation in this respect, it seems to me to come within the class of cases where the fraud of the vendor alonéis sufficient to vitiate the conveyance, though the vendee may have had no previous accession to it.
And what is the case before us ? Meachem being indebted to an amount far beyond his property, then-. *27 being suits depending against him, on which judgments were about to be recovered, makes a convey-anee of his whole remaining property, to a near con-nexion residing in the same house with him, and after the conveyance, remains in the possession and enjoyment of the property as apparent owner ; living as he himself states, in the style in which he had been accustomed to live, though entirely without property. Hardly any of the circumstances relied on as badges of fraud in Twyne’s case are wanting in this. I think the jury must be instructed, that, from these circumstances, the law draws a conclusion of fraud which is incapable of being rebutted or explained.

The motion is therefore granted.

O’Neall, J. concurred.